FILED

EDWARD MICHAEL O'BRIEN
Victoria Square
P.O. Box 91003
Santa Barbara, CA 93190
805-252-8990
emob@saviorg.com

2009 FEB -9 AM 11: 00

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CV09 00840 PA(AGRx)

EDWARD MICHAEL O'BRIEN,              ) Case No.
                                     )
        Plaintiff,                   )
                                     )
                                     )
                                     )          CIVIL COMPLAINT
vs.                                  )
                                     )
                                     )
                                     )
ADOBE SYSTEMS, INC.,                 )
                                     )
        Defendant.                   )
                                     )

2009 FEB -3 PH 3: 42

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY


# TABLE OF CONTENTS

|        |                        | PAGES   |
|--------|------------------------|---------|
| I.     | PROLOGUE               | 2 - 6   |
| II.    | DEFINITIONS            | 6 - 9   |
| III.   | GROUNDS FOR CAUSE      | 9 - 11  |
| IV.    | BACKGROUND FOR CAUSE   | 11 - 17 |
| V.     | RELEVANT MARKET        | 17 - 19 |
| VI.    | MONOPOLY POWER         | 19 - 20 |
| VII.   | CAUSE OF ACTION        | 20      |
| VIII.  | DAMAGES SPECIFIED      | 20 - 21 |
| IX.    | THEORY FOR CAUSE       | 21 - 24 |
| X.     | RELEVANT MONOPOLIES    | 24 - 26 |
| XI.    | STANDING               | 26      |
| XII.   | JURISDICTION           | 27      |
| XIII.  | PARTIES                | 28 - 30 |
| XIV.   | TRADE AND COMMERCE     | 30      |
| XV.    | SUMMARY                | 30      |
| XVI.   | CONCLUSION             | 30 - 31 |
| XVII.  | CHARGES                | 31 - 32 |
| XVIII. | PRAYER                 | 32      |

ACTS, CODES, CASES and PUBLICATIONS

The Clayton Act (1914), Sections 3 and 4

The Sherman Antitrust Act (1897)

United States Codes, Title 15, Sections 2, 14, 15 and 22

United States Codes, Title 26, Sections 501(c)3 and 509(a)2

United States Codes, Title 28, Sections 1331 and 1391

South Carolina Council of Milk Producers, Inc. v Newton (1966, CA4 SC) 360 F2d 414

Sullivan v Associated Billposters & Distributors (1919, DC NY) 272 F 323

United States v E. I. Du Pont de Nemours & Co. (1957) 353 US 586, 1 L Ed 2d 1057, 77 S Ct 872

Woods Exploration & Producing Co. v Aluminum Co. of America (1971, CA5 Tex) 438 F2d 1286

1966 CCH Trade Cases, sec. 71742, cert den 385 US 934, 17 L Ed 2d 215, 87 S Ct 295

End User License Agreement For Adobe Reader : Section 3.1
http://www.adobe.com/products/eulas/pdfs/Reader_AIR_WWEULA-Combined-20080204_1313.pdf

http://www.saviorg.com/1

http://www.saviorg.com/index

http://www.saviorg.com/ssd_Shockwave.html

http://mpt2.param.mobi

I.   PROLOGUE

Plaintiff Edward Michael O'Brien herein states *prima facie* complaint and claim for damages based on Defendant Adobe Systems, Inc.'s liability for exclusive dealing, obvious after first reading of *End User Licensing Agreement For Adobe Reader* at Section 3., 3.1 ("EULA1") , *End User Licensing Agreement For Adobe Flash Player* at Section 3., 3.1 ("EULA2"), and *End User Licensing Agreement For Adobe Shockwave Player* at Section 3., 3.1 ("EULA3"). [ http://www.adobe.com/products/eulas/ ]

Defendant ADOBE used monopoly power in PDF markets to restrain Mr. O'Brien's trade and competition in the digital video/audio market and the digital multimedia market which were integral in a certain area of commerce where ADOBE monopolized and restrained trade and competition by dealing exclusively.

Unlawful exclusive dealing in the PDF reader and digital media player markets compelled consumers to use *Microsoft Windows XP* that bundled *Windows Media Player. XP* did not support plaintiff's products and, consequently, restrained purchases of same when former, and would-be, customers decided download of another media player into their computer was too inconvenient, expensive or otherwise problematic.

Use of monopoly power in the Portable Document Format (PDF) reader market and in the digital animation and digital multimedia producer and player markets by Adobe Systems, Inc. ("ADOBE") to advance monopolization in certain other markets was intended to increase revenues for ADOBE and Microsoft Corporation ("MS") at the expense of numerous persons including Plaintiff O'Brien ("PLAINTIFF") who was a competitor in the digital video/audio media ("DVAM") and digital multimedia ("DMM") markets.

Defendant's compulsion of *MS Windows XP* usage via certain media player restrictions inter EULAs noted above injured the plaintiff when consumers submitted to ADOBE's exclusionary deals for *Adobe Reader, Adobe Flash Player* and *Adobe Shockwave Player* and changed their computer operating systems to *Windows XP*.

Defendant also injured the plaintiff when EULAs prohibited consumers wanting to download *Adobe Reader, Adobe Flash Player* and *Adobe Shockwave Player* (called "Runtimes" in EULA1 and "*Web Players*" in EULA2 and EULA3) from using *Adobe Flash Player* and *Adobe Shockwave Player* to play plaintiff's products on mobile devices, non-PC computers, Tablet PCs and Media Center PCs not operated by *MS Windows XP*.

When, as a condition for download of "free" *Adobe Reader, Adobe Flash Player* and *Adobe Shockwave Player*, defendant, inter

EULAs, proscribed use of its digital media players in all mobile devices, non-PC computers, Tablet PCs and Media Centers PCs not operated by *Windows XP Tablet PC Edition, and/or Windows XP Media Center PC Edition,* Adobe Systems, Inc. dealt exclusively and unlawfully and caused antitrust injury when consumers, needing *Adobe Reader, Adobe Flash Player* and/or *Adobe Shockwave Player* stopped/deferred purchases of plaintiff's digital media (.swf and .dcr files) produced for play on most computer systems including PCs, mobile devices, non-PCs, tablets and media centers.

Defendant's unlawful dealing injured Mr. O'Brien when consumers, wanting to download *Adobe Reader* and/or Runtimes (Web Players) but using Tablet PCs and/or Media Center PCs operated by non-MS systems, switched to *Windows XP* and deferred purchases of PLAINTIFF's products because MS bundled only *Windows Media Player* in *XP* and time/memory consumption and otherwise problematic download of additional player(s) was required for purchase/play of PLAINTIFF's digital media in *XP*.

ADOBE clearly intended, via monopoly power, to restrain competition in certain PC operating system markets and in the digital video/audio encoder ("DVAE") and the digital video/audio player ("DVAP") markets dominated by Microsoft Corporation.

4

1  Defendant clearly intended to, and did, restrain sales of
2  products produced on Real Networks, Inc. ("REAL") software in
3  the DVAM market because those products were competitive with
4  digital media developed by persons, especially professional
5  developers, who purchased and/or used ADOBE and MS software. As
6  stated, digital media produced on REAL software could not be
7  played on *Windows XP* without download of another media player.

8  Mr. O'Brien's economic injury was antitrust injury because
9  ADOBE's questionable exercise of monopoly power directly and
10 proximately impacted certain *target areas* where plaintiff was a
11 competitor.

12 "Claimant has standing to sue under sec. 4 of Clayton Act (15
13 USCS, sec. 15) if he can show himself within sector of economy
14 in which antitrust violation threatened breakdown of competitive
15 conditions, sector sometimes designated 'target area' of
16 defendant's illegal practices, and that he was proximately
17 injured thereby." South Carolina Council of Milk Producers, Inc.
18 v Newton (1966, CA4 SC) 360 F2d 414, 1966 CCH Trade Cases, sec.
19 71742, cert den 385 US 934, 17 L Ed 2d 215, 87 S Ct 295.

20 Mr. O'Brien was directly and proximately injured by ADOBE's
21 conduct that intentionally restrained interstate trade, commerce
22 and competition in a certain target area even though the
23 plaintiff was not a competitor in markets monopolized by ADOBE
24 and MS.

25 "Although it is not necessary that plaintiff should have been
26 himself engaged in interstate commerce, he must show direct
27 relation between illegal restraint on interstate commerce and

28

injury for which he claims damages." Sullivan v Associated Billposters & Distributors (1919, DC NY) 272 F 323.

## II. DEFINITIONS

**Adobe Runtime** : "Adobe Flash Player, Shockwave Player and Authorware Player (collectively, Adobe AIR and the Flash, Shockwave and Authorware players are the 'Adobe Runtimes'" [ ADOBE SYSTEMS, INC. – Warranty Disclaimer and Software License Agreement, Part II, sec. 1. Definitions ]

**PDF format** : "(**P**ortable **D**ocument **F**ormat) is the de facto standard for document publishing from ADOBE. On the Web, there are countless brochures, data sheets, white papers and technical manuals in the PDF format.

**Adobe Reader,** formerly *Acrobat Reader*, is ADOBE's free download for displaying and printing PDF files and hundreds of millions of users have downloaded this software from **www.adobe.com.** Adobe Reader historically let computer operators view and print PDF files, but not create or edit them. Starting with *Acrobat* 7 and *Adobe Reader* 7, users can manipulate (edit) certain PDF files.

**Adobe Acrobat** can convert a wide variety of document types on Windows, Mac and Unix to the PDF format. Non-Adobe products are also available for converting documents to PDF; for example,

*Jaws   PDF   Creator*   from   Global   Graphics   Software: (**www.globalgraphics.com**).

Adobe's applications such as *InDesign* and *Illustrator*, as well as non-Adobe applications, include PDF converters to export content to the PDF format. "

[Ibid., http://dictionary.zdnet.com/index.php?d=PDF ]

**Windows Media Player** (**WMP**) is a digital media player and media library application developed by Microsoft that is used for play of audio and/or video and viewing images on personal computers, Pocket PCs and Windows Mobile devices running the Microsoft Windows operating system. Editions of *Windows Media Player* were also released for Mac OS, Mac OS X and Solaris but development of these has since been discontinued.

**Mobile   Device:**   also   known   as   cellphone   device,   handheld device,  handheld  computer,  "Palmtop"  or  simply  handheld  is  a pocket-sized computing device, typically having a display screen with touch input or a miniature keyboard.

**Non-PC computer:** set top boxes (STB), web pads, tablets, game consoles,   TVs,   DVD   players,   electronic   billboards   or   other digital signage, internet appliances or other internet-connected devices, PDAs, medical devices, ATMs, telematic devices, gaming machines,   home   automation   systems,   kiosks,   remote   control

7

devices, or any other consumer electronics computer or device not a PC.

**Multimedia:** The term is used in contrast to *media* which only utilize traditional forms of printed or hand-produced methods. Multimedia includes a combination of text, audio, still images, animation, video, and interactivity content forms.

Multimedia is usually recorded, played, displayed or accessed by information content processing devices, such as computerized and electronic devices. It can also be part of a live performance.

**Open Source :** "Refers to software that is distributed with its source code so that end user organizations and vendors can modify it for their own purposes. Most open source licenses allow the software to be redistributed without restriction under the same terms of the license. For the complete, official definition of open source, visit **www.opensource.org/docs/osd.** For a list of approved open source licenses, visit **www.opensource.org/licenses.**

There are thousands of open source programs, and although they are used on most platforms, they are particularly common in the Unix world. Major examples are the *Linux* operating system, *Apache* Web server and *JBoss* application server.

A great amount of open source software is available at no charge and many open source projects are developed by a community of volunteers. However, there are commercial vendors that enhance open source software and charge a fee, the most notable example being the distribution of Linux ."

[ http://dictionary.zdnet.com/index.php?d=open+source ]

The .pdf file format, although invented by Adobe Systems, Inc., has been *Open Source* for many years.


### III. GROUNDS FOR CAUSE

Adobe Systems, Inc.'s tender of extremely valuable *Adobe Reader, Adobe Flash Player* and *Adobe Shockwave Player* to persons on the internet in exchange for their personal information and formal agreement with noted EULAs constituted discount sales.

Defendant's sales and sales methods violated Title 15, United States Codes, Section 2 and 14.

Mr. O'Brien did not formally complain to this court until he discovered ADOBE'S exclusive dealing had a day-to-day deleterious effect on company revenues.

EULA threat caused plaintiff's former and would-be customers to refrain from purchasing certain products. Specifically, consumers who owned Tablet PCs, Media Center PCs and certain

mobile devices and non-PC computers (mobile phones, hand-held devices, etc.) were precluded from use of *Adobe Shockwave* if unwilling, or unable, to use *Windows XP* and they were prohibited from facile use of *Real Media Player* if willing to use *XP*.

Exclusionary policy effectively foreclosed sales of software competitive with *MS Media Encoder* including *Real Producer, Real Producer Plus, Real Media 10* and *QuickTime Media Producer*.

Plaintiff's products, for sale on the internet since 2002, were developed using Macromedia, Inc.'s *Macromind Flash, Macromind Director, Real Producer, Real Producer Plus* and *Real Media 10* and required *Adobe Flash Player, Adobe Shockwave Player* and *Real Media Player,* or a number of other non-MS players, that supported .dcr, .swf, .rm, .ra, .rmvb, .ram, .smil, and .smi files.

Restraint of media player usage via compel of *Windows XP,* restrained trade and competition and caused damages (and disruption) in markets where PLAINTIFF was competitive.

Thousands of general public consumers, professionals, businesses and government agencies, interstate and globally, download and use the essential *Adobe Reader, Adobe Flash Player* and *Adobe Shockwave Player* pursuant to formal agreement with noted EULAs.

Certain few consumers, personally known to the plaintiff, and many other consumers refused to jeopardize themselves by violating EULAs in order to purchase and/or play plaintiff's products.

Defendant's restraint of plaintiff's interstate and worldwide trade and competition was clearly intentional. Antitrust injury was direct and proximate.

PLAINTIFF did not discover any evidence that MS expressly, or impliedly, contracted with, or otherwise agreed with, ADOBE to monopolize, exclusively deal or otherwise restrain trade or competition in any market.

## IV.  BACKGROUND FOR CAUSE

Adobe Systems, Inc. has long enjoyed monopoly in the market for publication of internet documents in the *Portable Document Format.*

Because the vast majority of authoritative, higher quality documents for internet distribution are published on *Adobe Acrobat,* and because *Acrobat* productions require *Adobe Reader* for optimal decipher, ADOBE has monopoly power to compel most would-be readers of PDF documents on the internet comply with EULA1 before download of *Adobe Reader.*

To circumvent breach-of-contract liability, downloaders of *Adobe Reader* must formally agree not to use *Adobe Flash Player*, *Adobe Shockwave Player* or *Adobe Authorware Player* to play digital media files in all mobile devices and other non-PC devices and in Tablet PCs and Media Center PCs when other than a Microsoft operating system is used.

When ADOBE bought Macromedia, Inc. in 2005 it appropriated Macromedia's server (code) for play of all .dcr files (*Director* shockwave movies) on computers accessing the internet.

ADOBE also acquired *Macromedia Flash Player* and *Macromedia Shockwave Player* for play of .swf and .dcr files (*Flash* and *Shockwave* movies) on computers online or off.

After 2005, users needed *Adobe Flash Player* and *Adobe Shockwave Player* to play *Flash* movies and *Shockwave* movies.

Today, .dcr files developed and published on the internet, or otherwise distributed before 2005, must be played on *Adobe Shockwave Player*.

Macromedia's *Shockwave Player* no longer exists. If consumer loses right to use *Adobe Shockwave Player* he/she cannot legally view .dcr files produced before or after 2005 even though files play via macromedia codebase and pluginspace URL now ADOBE's property.

Via antitrust questionable acquisition, defendant now obtains unauthorized advertisement and linkage to its website.

Hosted by Angelfire.com and sold continuously on the internet since 2005 at http://www.saviorg.com/ssd Shockwave.html, SAVIORG product entitled "STAY" on the drop-down menu contains on the page accessed after clicking on "click" (Frog) a tab, fourth from the left of interface, that links users to another website.

Although PLAINTIFF created  link  to access the Macromedia, Inc. "Showcase" webpage in 2005, today same tab/link routes customers to ADOBE's "Customer Showcase" webpage without our authorization or ability to modify.

PLAINTIFF also produced and sold Flash movies (.fla and .swf files) produced on Macromedia, Inc.'s *Flash* program before 2005.

Many persons, worldwide, read the EULAs and decided they could not legally use Adobe Runtimes in their mobile devices. Countless times, since EULAs were first published, consumers, wanting download of *Adobe Reader, Flash Player* or Shockwave Player, decided .dcr and .swf files were not  desirable for play on their mobile devices, non-PC computers and/or Tablet PCs and Media Center PCs.

Day-after-day and year-after-year, ADOBE inexorably increased its own and MS monopolies via exclusive dealing in the PDF reader and Adobe Runtimes markets.

Does ADOBE share in MS profits? Does ADOBE own a lot of MS stock? Equitable adjudication of this case will discover answers to these important questions.

" End-User License Agreement for Adobe Reader

**NOTICE TO USER:** PLEASE READ THIS CONTRACT CAREFULLY. BY USING, COPYING OR DISTRIBUTING ALL OR ANY PORTION OF THE ADOBE SOFTWARE ("SOFTWARE") YOU ACCEPT ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING, IN PARTICULAR THE LIMITATIONS ON: USE CONTAINED IN SECTION 2; TRANSFERABILITY IN SECTION 4; WARRANTY IN SECTION 7; AND LIABILITY IN SECTION 8. YOU AGREE THAT THIS AGREEMENT IS ENFORCEABLE LIKE ANY WRITTEN NEGOTIATED AGREEMENT SIGNED BY YOU. THIS AGREEMENT IS ENFORCEABLE AGAINST YOU AND ANY LEGAL ENTITY THAT OBTAINED THE SOFTWARE AND ON WHOSE BEHALF IT IS USED. IF YOU DO NOT AGREE, DO NOT USE THIS SOFTWARE.

**3. Obligations and Restrictions.**

3.1 Adobe Runtime Restrictions. You may not use any Adobe Runtime on any non-PC device or with any embedded or device version of any operating system. For the avoidance of doubt, and by example only, you may not use an Adobe Runtime on any (a) mobile devices, set top boxes (STB), handhelds, phones, web pads, tablets and Tablet PCs that are not running Windows XP Tablet PC Edition, game consoles, TVs, DVD players, media centers (excluding Windows XP Media Center Edition and its successors), electronic billboards or other digital signage, internet appliances or other internet-connected devices, PDAs, medical devices, ATMs, telematic devices, gaming machines, home automation systems, kiosks, remote control devices, or any other consumer electronics device, (b) operator-based mobile, cable,

satellite, or television systems or (c) other closed system

devices." [ End User License Agreement For Adobe Reader : Section

3.,3.1http://www.adobe.com/products/eulas/pdfs/Reader AIR WWEULA

-Combined-20080204 1313.pdf ]

ADOBE injured PLAINTIFF when former and would-be purchasers of

PLAINTIFF'S digital media products were dissuaded from purchases

via monopoly power unlawfully exercised by ADOBE with EULAs

Claims for mistake or inadvertence will not effectively defend

ADOBE in this case. Although Section 3.1 has been in EULAs for

many years, latest version(s) were promulgated no more than six

months ago, soon after PLAINTIFF began writing this complaint on

computers at UCSB.

New version(s) are word-for-word with older versions except

for replacement of "Web Players" with "Adobe Runtime" in EULA1.

Older version copied below.

**"3. Restrictions.**

3.1 Web Player Prohibited Devices. You may not Use any Web Player

on any non-PC device or with any embedded or device version of

any operating system. For the avoidance of doubt, and by example

only, you may not use a Web Player on any (a) mobile devices,

set top boxes (STB), handhelds, phones, web pads, tablets and

Tablet PCs that are not running Windows XP Tablet PC Edition,

game consoles, TVs, DVD players, media centers (excluding

Windows XP Media Center Edition and its successors), electronic billboards or other digital signage, internet appliances or other internet-connected devices, PDAs, medical devices, ATMs, telematic devices, gaming machines, home automation systems, kiosks, remote control devices, or any other consumer electronics device, (b) operator-based mobile, cable, satellite, or television satellite, or television systems or (c) other closed system devices."

"Copyright © 2008 Adobe Systems Incorporated. All rights reserved.

Use of this website signifies your agreement to the Terms of Use and Online Privacy Policy (updated 03-30-2007)."

ADOBE clearly intended, long-term, to exclude Adobe Runtimes from all mobile devices and non-PC computers used by downloaders of *Adobe Reader*.

One can only speculate why. Reasonable theory: like ADOBE's advancement of the MS operating system monopoly via monopoly power in PDF readers, advance of *Windows Media Player* was at the heart of defendant's exclusive dealing. *Windows Media Player* plays Flash, Shockwave and Authorware files seamlessly on mobile devices and non-PCs operated by MS software.

For many consumers, website search, download, memory consumption, setup and/or "learning curve" mastery of additional player(s) was considered prohibitive for

16

purchase/play of plaintiff's products on *Real Media Player* or the like.

Plaintiff can prove economic injury intentionally inflicted by Adobe Systems when many consumers, who were using a non-MS operating system and needed to use Adobe Runtimes, decided to install *Windows XP* to operate their Tablet PCs and Media Center PCs after reading EULAs and, thereby, deferred purchases of plaintiff's products because separate download, setup and mastery of *Real Media Player*, or similar non-MS player, was too problematic on *Windows XP*.

Exclusive dealing in restraint of trade and competition by Adobe Systems, Inc. violated the Sherman Antitrust Act (1897) and caused antitrust injury of the type antitrust laws were created and adjudicated to alleviate.

Defendant's restraint of competition, trade and commerce foreclosed at least $200,000. of interstate business.

## V. RELEVANT MARKET

PLAINTIFF's injury from defendant's anticompetitive conduct alleged in this complaint was *antitrust* injury because it occurred in the relevant market.

"Relevant market is phrase used to describe arena within which strength of competitive forces is measured; it does not

necessarily mean selling place." Woods Exploration & Producing Co. v Aluminum Co. of America (1971, CA5 Tex) 438 F2d 1286.

Claims for monopolization must declare (specify) illegal use of monopoly power in a *relevant market*. Legal term is singular because "market" can (does in this case) connote one, contiguous area of commercial relations. Area of interaction may encompass not only the market-of-sale but certain closely related markets impacted by same conduct empowered by same monopoly.

"In order to determine existence of tendency to monopoly in any line of business, area or areas of existing effective competition in which monopoly power might be exercised must first be determined." United States v E. I. Du Pont de Nemours & Co. (1957) 353 US 586, 1 L Ed 2d 1057, 77 S Ct 872.

There exists no commercially viable substitute for *Adobe Acrobat*. Virtually all PDF document publications, like court records, books, articles, guides, statistical analysis and charts and many other forms of high-level content, are rendered in *Adobe Acrobat* and read by *Adobe Reader*. Consumers are well acquainted with and universally demand the format and related applications.

There exist numerous competitors in the market for PDF readers like *Adobe Reader*. However, ADOBE enjoys 99% market share.

There exist numerous competitors in markets for software applications that produce· and play digital animation, digital

multimedia and e-learning content. However, ADOBE enjoys over 90% market share in each market.

There exist many competitors in markets for digital media (files) compatible with players immediately, or eventually, effective on most computer operating systems. Although most products sold in said markets are unique, artistically, substitution for approximate media is widespread.

There exist many competitors in the market for digital video/audio producers and players.

There exist many competitors in markets for Tablet PCs, Media Center PCs and non-PC operating systems. Numerous operating systems can be substituted for market dominant *MS Windows XP*.

## VI. MONOPOLY POWER

"Monopoly power is defined as power to control prices or ex-clude competition; existence of monopoly power may be inferred from predominant share of relevant market." Shavirnoch v Clark Oil & Refining Corp. (1984, CA6 Mich) 726 F2d 291, 1984-1 CCH Trade Cases sec. 65832, 38 FR Serv 2d 826.

Proof of ADOBE's monopoly power in the relevant market, especially in controlling PDF markets, is not necessary beyond statement of well known facts. Proof of defendant's monopoly power is evidenced by terms in EULAs that require exclusion of ADOBE's competitors and fact EULAs have long been effective tools for defendant's exclusive dealing and monopolization.

Clearly, the defendant had monopoly power not only in PDF markets but also in markets for PC and non-PC operating systems, digital video/audio encoders and players and digital multimedia producers and players because ADOBE could, emphatically did, substantially exclude competition in those markets.

Squelch of *Runtimes* was squelch of media requiring *Adobe Flash Player* and *Adobe Shockwave Player*. Crush of REAL was crush of PLAINTIFF. Promulgation of EULAs was international, interstate, daily and hourly exercise of monopoly to exclude competition in numerous closely related markets that included markets where plaintiff struggled to make a living.


VII. CAUSE OF ACTION


Edward Michael O'Brien complains of antitrust injury inflicted by; claims payment of damages from, and brings this action against Adobe Systems, Inc. under Sec. 3 and 4 of the Clayton Act (1914) and Title 15, United States Codes, Section 2, 14 and 15.

VIII. DAMAGES SPECIFIED


Since ADOBE's acquisition of Macromedia, Inc., PLAINTIFF'S sales of DVAM products decreased markedly. However, total damages

incurred were not as much from revenue loss as from company net worth diminution.

PLAINTIFF's inventory and other assets were conservatively valued at $3,100,000. in 2005 and decreased to $1,900,000. in 2008.

Mr. O'Brien claims payment of damages to business value (sale value) of $1,500,000. (trebled). Plaintiff also claims damages to revenues over time of cause of action estimated to be $250,000. (trebled).

IX. THEORY FOR CAUSE

ADOBE changed EULA1 at Section 3., subsection 3.1 shortly after Plaintiff O'Brien began drafting this complaint. The "Runtime" concept was added, apparently, to mask ADOBE's exclusive dealing strategy more apparent in EULA2 and EULA3.

Runtimes are compatible with many non-windows operating systems. Many users of Linux and other non-MS systems use Runtimes for play of animation, multimedia and e-learning files.

Adobe Systems, Inc. intentionally, directly and proximately injured the plaintiff when customers were compelled by EULAs to delay, divert and/or rescind purchases from plaintiff's business.

Inflexible demand for unique and completely monopolized software compelled would-be downloaders of same to act in

agreement with EULAs and, thereby, (a) defer purchases and/or play of files incompatible with MS digital media players, (b) defer purchases and play of certain multimedia files, (c) defer purchases of PC and non-PC operating systems competitive with systems sold by Microsoft, and (d) affirm (join with) defendant's pandemic exclusive dealing in violation of the Sherman Act and state antitrust codes.

PLAINTIFF has been an affiliate (internet publisher) and customer of Real Networks, Inc. since year 2005. He has been a commercial developer/seller of digital media (files) produced on REAL and ADOBE (Macromedia) software since 2002.

ADOBE's monopolization intentionally decreased REAL's business revenues and, of course, revenues of many developer/sellers whose products were created for play on *Real Media Player* or similar non-MS player.

Because ADOBE absolutely monopolizes the internet document publishing market with *Adobe Acrobat*, and because PLAINTIFF's legal documents and literature for sale on the internet required *Acrobat* publication, plaintiff was compelled to purchase *Adobe Acrobat* ($600. retail price published on Adobe's website) or subscribe to Adobe Online PDF Services and pay monopoly conditioned pricing for publication of commercially viable, albeit editing restricted, PDF documents.

After publication of several PDF documents and embed of same in Mr. O'Brien's website (html), plaintiff realized in order to read the documents he had to personally download *Adobe Reader*. In order to legally download *Reader*, Mr. O'Brien had to formally accept Adobe's *End-User License Agreement For Adobe Reader*. In process of carefully reading EULA1, Mr. O'Brien discovered facts stated in this complaint that explained certain business set-backs and present cause of action.

Millions of persons worldwide obtained *Adobe Reader, Adobe Flash Player, Adobe Shockwave Player* and *Adobe Authorware Player* via download from the ADOBE website. Millions more will obtain same software (or upgrades) in the future.

Of past and future millions, many will revisit the ADOBE website to obtain the latest versions. Again, consumers in all walks of life will formally agree with EULAs and, thereby, validate ADOBE's unlawful policy. After their validation, many consumers will subsequently violate EULAs and, presumeably, breach law and ethical standards.

Potential for private and corporate liability and injury is, absent judicial intervention, unlimited. Millions of consumers own a Tablet PC, Media Center PC, mobile device and/or a non-PC computer. Many declined (will decline) to make purchases of plaintiff's products because they did not use *Windows XP* to operate certain computers or because they refused to

inconvenience themselves with acquisition of a second media player for use on *Windows XP*.


## X. RELEVANT MONOPOLIES


Adobe Systems, Inc. owns ten (10) worldwide monopolies: *Adobe PostScript* (**printer drivers**), *Adobe Premiere* (**semi-professional digital video editing**), *Adobe Acrobat* (**PDF document publishing**), *Adobe Reader* (**PDF document reading**), *Adobe FLASH* (**animation production**), Adobe FLASH Player (**animation playback**), *Adobe Shockwave* (formerly *Macromind Director*: **multimedia authoring**), *Adobe Shockwave Player* (formerly Macromind Shockwave Player: **multimedia playback**)*,* *Adobe Authorware* (**e-learning authoring**) and *Adobe Authorware Player* (**e-learning playback**).

Monopoly power in the **PDF document publishing** and **PDF document reading** markets was used by ADOBE to increase monopolies and revenues in numerous other markets – six (6) dominated by Adobe Systems, Inc. and three (3) by the Microsoft Corporation.

Terms in EULAs are *res ipsa loquitor* evidence for monopolization and restraint of trade and competition via exclusive dealing.

ADOBE's monopolization via exclusive dealing increased market share and revenues in the **non-animation player** market and in other markets dominated by MS, including the **digital audio/video**

**producer** market (*Windows Media Encoder*), the **digital audio/video player** market (*Windows Media Player*) and the **Tablet PC** and **Media Center PC operating systems** markets (*Windows XP for Tablet PC - Windows XP for Media Center PC*).

Fact, consumers worldwide having a Tablet PC and/or a Media Center PC not operated by an MS product were precluded from downloading *Adobe Reader* if they intended to use *Adobe Flash Player, Adobe Shockwave Player* and/or *Adobe Authorware Player* caused economic injury of the type antitrust laws were created to curtail and punish.

Fact, *Adobe Acrobat* renders incomparable PDF documents compelled many individuals, corporations, government agencies and other authoritative document creators and publishers to use *Acrobat*. Many, if not most, documents from said sources expressly state *Adobe Reader* or *Adobe Acrobat* (bundling *Reader*) must be downloaded into a computer attempting to read *Adobe Acrobat* documents.

It is universally understood *Adobe Reader*, inter *Adobe Acrobat* and as a standalone application, has over 99% market share, very low elasticity of demand and no effective substitutes. It is an essential software product globally demanded.

ADOBE has long and openly admitted a large portion of its business comes from cooperative dealings with Microsoft. As stated above, since its acquisition of Macromedia, Inc. in 2005,

ADOBE has enjoyed monopoly (99% market share) in animation and multimedia producer and player markets via *Adobe FLASH* and *Adobe Shockwave.*

Digital media giant, deriving over 50% of its revenues from contracts with MS and from sales of products that preclude import and/or render of files produced on software competitive with ADOBE and MS products, took action to increase the notorious MS operating system monopoly and the recently acquired MS digital media encoder and player monopolies via exclusive dealing in the PDF reader and media player markets and, thereby, breached Title 15, U.S.C., Sections 2 and 14.


## XI. STANDING


Edward Michael O'Brien is a proper person to bring this action because he was a competitor (developer/seller) in the digital video/audio media market and the digital multimedia market and experienced measurable and legally sufficient damages directly from plaintiff's illegal actions in a relevant area of commerce.

PLAINTIFF is also well experienced in Title 15, section 15 litigation of claims against software companies.

## XII. JURISDICTION

Because this civil action arises under the laws of the United States of America, this Court has jurisdiction over this matter pursuant to the Sherman Antitrust Act, Title 15 U.S.C., section 15 and Title 28 U.S.C., section 1331.

PLAINTIFF was born in Pasadena, California. Birth certificate and valid driver's license were issued by the State of California. Mr. O'Brien is currently registered to vote in California. SAVIORG, plaintiff's corporation, was founded in 1990 and operated primarily in California. Mr. O'Brien has done non-profit and for-profit business in California since 1990.

Adobe Systems, Inc. maintains offices; transacts business, and/or is found in the Central District of California within the meaning of 15 U.S.C. sec. 22.  ADOBE derives more revenue from sales in California than in any other state. Defendant's home offices are located in San Jose, California.

Venue is proper in this district under 28  U.S.C., sec. 1391. This action is within time limits because offenses complained of commenced less than four years ago.

## XIII. PARTIES

Adobe Systems Incorporated was founded in 1982 and is currently located at 345 Park Avenue, San Jose, California. The company states it was founded on a simple premise: how could text and images on a computer screen translate beautifully and accurately into print?

Building on this legacy and looking to the future, ADOBE declares itself committed to revolutionizing how the world engages with ideas and information. Under the leadership of Shantanu Narayen, appointed ADOBE's Chief Executive Officer in 2007, the company is poised to meet the growing challenge of "enabling customer engagement".

Adobe Systems incorporated
Headquarters:
San Jose, California
*www.adobe.com*
Stock Symbol ADBE (Nasdaq): Adobe Fiscal 2006 Revenues US $2.575 billion (FYE Dec. 1, 2006)

Edward "Ed" O'Brien is a graduate of the University of California at Santa Barbara and a former Captain (0-3) in the United States Marine Corps (air traffic control specialist: Spirit of America Honor Medal). Mr. O'Brien is the founder of SAVIORG, a California public charity [ Title 26 U.S.C., sec. 501(c)3 / 509(a)2 ] and sole-proprietor of  SAVICOM, a software

and website development company established in California and operational worldwide.

In addition to software and website content, SAVIORG (http://www.saviorg.com/1) sells fashionably designed clothing, motion picture scripts, a humor book, a book on taxation and *GOLF COACH*, the first (copyrighted, 1989) software application to enable golfers to acquire, process, analyze and present golf statistics on PC, server and mainframe computers.

Plaintiff's software, digital media and artwork inventory is valued at $1,500,000.

Mr. O'Brien played professional golf on the California Golden State Professional Golf Tour in 1992. He worked as a teacher and tennis coach at Righetti High School in Orcutt, CA and as a minister at Oral Roberts University where he studied multimedia production and implemented *Golf Coach* expressly for the ORU golf team. Mr. O'Brien has produced and sold digital media since year 2000. He recently launched *Mobile Poker Tells*, mobile websites in both English and Chinese languages custom crafted for use on *mobile* devices, non-PCs, PCs, Tablet PCs and Media Center PCs. (http://mpt2.param.mobi)

Mr. O'Brien is currently a resident of Santa Barbara, California and Princeville, Hawaii. Corporate Office: P.O.

91003, Santa Barbara, CA 93190, tel 805-252-8990, fax 805-562-8457

## XIV. TRADE AND COMMERCE

Throughout the period covered by this complaint, Adobe Systems, Inc. and Edward Michael O'Brien conducted business throughout the United States and worldwide. Business restrained as alleged over time of cause of action constituted at least $200,000. of interstate commerce.

## XV. SUMMARY

Defendant's monopolization injured plaintiff's business (revenues and company value) that sold digital media produced on Macromedia, Inc. and REAL software because many of plaintiff's customers, and would-be customers, who wanted to download *Adobe Reader* and/or Adobe Runtimes used mobile devices, non-PCs, Tablet PCs and/or Media Center PCs not operated by *Windows XP* and could not legally use Runtimes or *Windows Media Player* to play plaintiff's products.

## XVI. CONCLUSION

ADOBE's antitrust violations threatened and achieved breakdown of competitive conditions not only in its own markets

but also in a target area of markets where PLAINTIFF was a competitor. Therefore, defendant's illegal practices caused injury to the plaintiff that was direct and proximate.

Defendant's exclusive dealing injured the plaintiff when it forced consumers to use *Windows XP* and avoid use of mobile devices and non-PCs not operated by a Microsoft product.

Adobe Systems, Inc. restrained sales and competition in the digital video/audio market and the digital multimedia market without adding pro-competitive benefits to same when exclusive dealing in PDF reader and Adobe Runtimes markets curtailed sales of digital media produced on Real Networks, Inc. software immediately not playable on *Windows XP*.

Unlawful dealings in violation of United States Codes, sec. 2 and 14, directly and proximately caused economic injury and other injury, including mental distress, to legally disabled plaintiff.

Same offenses substantially diminished PLAINTIFF's company revenues and overall value.

Payment of compensation and other damages (relief) can be justified and ordered by this court.

## XVII. CHARGES

As alleged above, Defendant Adobe Systems, Inc. injured Plaintiff Edward M. O'Brien when it monopolized certain markets

specified herein and, thereby, violated Title 15, U.S.C., Section 2 for which the penalty is not more than $100,000,000. nor more than ten (10) years in prison.

As alleged above, Defendant Adobe Systems, Inc. injured Plaintiff Edward M. O'Brien when it dealt exclusively in certain markets specified herein and, thereby, violated Title 15, U.S.C., Section 14 for which the penalty is not specified in federal statutes but readily discerned in case law.

<div align="center">XVIII. PRAYER</div>

Plaintiff O'Brien respectfully prays this court award compensatory damages totaling $5,250,000. and punitive damages totaling $10,000,000.

PLAINTIFF also prays for other relief as the court deems necessary to include additional fine(s) required by statute not to exceed $100,000,000.

_____

Respectfully submitted on December 12, 2008 in Los Angeles, California by

*E. M. O'Brien*
_____
EDWARD MICHAEL O'BRIEN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Alicia G.  Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV09- 840 PA (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☒) | DEFENDANTS |
|---|---|
| EDWARD MICHAEL O'BRIEN | ADOBE SYSTEMS, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Edward M. O'Brien 7127 Hollister St., 25-A 805-252-8990 / Goleta, CA 93117 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No   ☒ MONEY DEMANDED IN COMPLAINT: $ 15,250,000.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

TITLE 15 U.S.C., Sec. 2, 14, 15

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 446 American with Disabilities - Other ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: CV09 00840

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Clara | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
<u>Note: In land condemnation cases, use the location of the tract of land involved</u>

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  *E. M. O'Brien*     Date  02/02/2009

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

FOR OFFICE USE ONLY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

EDWARD MICHAEL O'BRIEN

PLAINTIFF(S)

v.

ADOBE SYSTEMS, INC.

DEFENDANT(S).

CASE NUMBER

CV09 00840 PA (AGRx)

SUMMONS

FOR OFFICE USE ONLY

TO:   DEFENDANT(S):   ADOBE SYSTEMS, INC.

A lawsuit has been filed against you.

Within 20¹ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Edward M. O'Brien _____, whose address is 7127 Hollister St. 25-A, Goleta, CA 93117 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 2/9/09

By: _____
Deputy Clerk

SEAL

(Seal of the Court)

FOR OFFICE USE ONLY

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*